**JOHNSON et al. v. FRIERSON et al.**

No. 2140.

Court of Civil Appeals of Texas. Waco.

Oct. 12, 1939.

Rehearing Denied Nov. 23, 1939.

Lem Wray, of Waxahachie, for appellants.

J. C. Lumpkins and A. D. Emerson, both of Waxahachie, for appellees.

GEORGE, Justice.

M. E. Frierson and Tom J. Frierson instituted this suit in the district court of Ellis county against Maria Johnson and husband, Tom Johnson, seeking recovery on $1,100 note executed by Maria Johnson on September 26, 1928 and foreclosure of vendor's lien, and in the alternative for judgment on notes aggregating $800 executed by Tom and Maria Johnson to Dunaway Bros., and in the further alternative alleging that they were equitable assignees of the balance due on the notes aggregating $800 and mortgagees in possession of the property with the knowledge and consent of Tom and Maria Johnson; that they had paid the taxes and insurance premiums on the property and all costs of repairs and were by virtue of such facts entitled to retain possession of the property until the obligation evidenced by the notes to Dunaway Bros., were paid, etc. Tom and Maria

Johnson answered, pleading general denial and specially that all instruments executed as of January 1, 1928 were void, because (1) the property was community of Tom and Maria Johnson, (2) that all such instruments were executed without the knowledge and joinder of the husband, Tom Johnson, (3) that the property at all times since 1917 had been the homestead of Tom and Maria Johnson, and (4) that Tom J. Frierson by misrepresentations induced Maria Johnson to pay him rent and to purchase the property and make him payments on the $1,100 note, and asked that the cloud cast on their title by the deed and note of September 26, 1928 be canceled and removed. But they did not plead limitation as a bar to a recovery of the balance due by them on the notes executed to Dunaway Bros. The case was tried before the court and a jury and judgment was rendered that Tom and Maria Johnson pay into the registry of the court for the use and benefit of Tom J. Frierson and M. E. Frierson the sum of $410.75 within thirty days from the date of the judgment, and that Tom and Maria Johnson be quieted in their title and possession of the property in controversy, but that if they failed to do so, then that the Frierson's debt evidenced by the $1100.00 note in the amount of $1474.81 be established as a debt against lot No. 48, Fairview Addition to the city of Waxahachie, and that the vendor's lien securing payment of said sum be foreclosed on said property as it existed on August 27, 1928 (September 26, 1928), and that order of sale issue, etc.

The jury found, in response to special issues submitted to them, (1) that O. B. Dunaway on and after April 3, 1928 and prior to the sale by him to Tom Frierson of said lot No. 48, obtained peaceable possession of such property; (2) that there was not any amount now due and unpaid on the original indebtedness incurred by Tom and Maria Johnson to Dunaway Bros.; (3) that Tom Frierson obtained peaceable possession of said lot No. 48 after he had purchased it from O. B. Dunaway and prior to the time that he and his wife deeded same to Maria Johnson; (4) that Tom Frierson obtained possession of said property with the knowledge and consent of Tom and Maria Johnson prior to the time he deeded the lot to Maria Johnson; (5) that Maria Johnson had made cash payments aggregating $480.19 on the $1100.00 note; (6) that Tom Frierson had paid taxes on the lot in the aggregate

amount of $264.02; (7) that Tom Frierson had expended for repairs on the improvements located on said lot the aggregate sum of $101.55; (8) that Tom Frierson had paid fire insurance premiums on the property in the sum of $52.33; (9) that Alice Booker was the agent of Tom and Maria Johnson at and after the time O. B. Dunaway became the purchaser of said lot at trustee's sale on April 3, 1928; (10) that Alice Booker was not the agent of Tom and Maria Johnson at and prior to the time the property was deeded by Tom Frierson and wife, Martha Frierson, to Maria Johnson; (11) that Martha Frierson agreed with Alice Booker that the Friersons would let Maria Johnson buy said lot No. 48 if they bought the same from O. B. Dunaway; (12) that Alice Booker paid rents to O. B. Dunaway for Maria and Tom Johnson after O. B. Dunaway bought the lot on April 3, 1928; (13) that Maria and Tom Johnson paid rents to Tom and Martha Frierson after they purchased the property from O. B. Dunaway and prior to the time the deed was made by Tom Frierson and Martha Frierson to Maria Johnson; (14) that Tom Johnson and Maria Johnson, with full knowledge that the lot had been sold to O. B. Dunaway at trustee's sale on April 3, 1928 and that it had thereafter been conveyed to Tom Frierson on August 17, 1928, acquiesced in such two previous deeds on September 26, 1928, when the deed was made by Tom and Martha Frierson to Maria Johnson; (15) that Tom Frierson represented to Maria Johnson that he had a good title to said lot; (16) that Maria Johnson relied on such representations made to her by Tom Frierson; (17) that Maria Johnson was induced by such representations to purchase lot No. 48; (18) that Maria Johnson would not have paid rent to Tom Frierson on said lot No. 48 had she not believed and relied upon his representations that he had a good title to said property; (19) that Maria Johnson ceased to rely on the representations of the said Tom Frierson on or about September 19, 1936; (20) that Tom and Martha Frierson had collected rents on said property in the sum of $232.25; (21) that Tom Johnson learned that his wife, Maria Johnson, had bought the lot from Tom Frierson in September 1929; (22) that Maria Johnson learned that O. B. Dunaway had sold the lot in question to Tom Frierson on August 27, 1928; (23) that Maria Johnson learned that Dunaway Bros., had caused the property to be foreclosed and sold at trustee's sale on or about August 1928; (24) that Tom Johnson learned that Dunaway Bros., had caused the lot to be foreclosed and sold at trustee's sale on or about May 1, 1928; and (25) that Maria Johnson was induced to pay rents on the property by the representations of Tom Frierson that he had a good title to said property.

Tom and Maria Johnson were married on March 10, 1907. Lot No. 48, Fairview Addition to the city of Waxahachie, was conveyed to Tom Johnson by R. W. Getzendaner by deed dated December 5, 1912. Tom Johnson and Maria Johnson, on September 1, 1917, executed a mechanic's and materialman's lien on the lot to Dunaway Bros., to secure payment of notes aggregating $800 in consideration of Dunaway Bros. furnishing material for the construction of a house on lot No. 48. The payment of the $800 was additionally secured by deed of trust to J. F. Dunaway, trustee. The deed of trust provided that Tom and Maria Johnson should pay all taxes as they became due and keep the buildings insured against loss by fire in some solvent insurance company to the extent insurance could be obtained thereon, and that loss, if any, by fire should be payable to the trustee as his interests might appear. It also authorized the trustee to pay the taxes and insurance premiums in the event Tom and Maria failed so to do. It further provided that such taxes and insurance premiums so paid by the trustee should become a part of the principal indebtedness and bear interest at the same rate. Tom and Maria Johnson moved into the house upon its completion and commenced to use it as their home. On June 16, 1923, the time of the payment of the balance due on that indebtedness in the sum of $447.50 was in writing extended to January 1, 1924. The property was sold on April 3, 1928 by J. F. Dunaway, trustee, for the sum of $714.83, the amount then due to Dunaway Bros., who immediately thereafter took possession of the property as owner under and in reliance on such foreclosure and purchase. It appears that possession was taken without the consent of either Tom or Maria Johnson, but that neither of them, after obtaining knowledge thereof, objected. O. B. Dunaway collected some rent on the property from Alice Booker. O. B. Dunaway, on August 27, 1928, conveyed the property by deed to Tom J. Frierson for $600, $100 cash and five notes of $100

each. Tom J. Frierson, upon his purchase of the property, took possession and collected $6 in rent from Maria Johnson. Tom J. Frierson conveyed the property to his wife, M. E. Frierson, by warranty deed dated September 26, 1928. Tom J. Frierson and M. E. Frierson, on September 26, 1928 conveyed the property to Maria Johnson by deed, for the consideration of $1200, $100 cash in hand paid and $1100 evidenced by note of that date and retained therein lien to secure payment of such $1100 note. Tom Johnson went to Dallas in 1926 to work as a carpenter. He purchased a lot in Dallas in 1929, built a house thereon, and lived in it for a short time. Maria Johnson occupied the house in Waxahachie and made payments on the $1100 note until sometime in 1930, when she went to live in Dallas with her husband. She then turned the property over to Tom J. Frierson and requested him to take care of it and rent it for her. Tom J. Frierson has had possession of the property since that time with the consent of Maria Johnson and with the knowledge of Tom Johnson and has collected the rents therefrom, paid taxes, fire insurance premiums and costs of repairs thereon.

There can be no valid execution of a power of sale in a mortgage or deed of trust after the expiration of the time expressly specified by statute, for the purpose of the original act of 1905, Articles 5693, 5694 and 5695, and the several amendatory acts (same being embodied at this time in Article 5520, Vernon's Ann. Civ.St. art. 5520, and art. 5522) was to fix a time within which power of sale conferred in mortgages and deeds of trust might be exercised. Yates v. Darby, Tex. Com.App., 131 S.W.2d 95; Cathey v. Weaver, 111 Tex. 515, 242 S.W. 447; First National Bank of Alvarado v. Lane, Tex.Civ.App., 265 S.W. 763; Howard v. Stahl, Tex.Civ.App., 211 S.W. 826; Rudolph v. Hively, Tex.Civ.App., 188 S.W. 721; 41 C.J. 944, sec. 1378. Thus, the sale made by J. F. Dunaway, as trustee in the deed of trust, to O. B. Dunaway, member of the partnership of Dunaway Bros., on April 3, 1928, four years, three months and two days after the maturity of the notes given to Dunaway Bros., did not divest Tom and Maria Johnson of their title to the property in controversy. However, it does not follow from this that the moral obligation of Tom and Maria Johnson to permit the property to be appropriated by O. B. Dunaway and his vendees to the payment of the balance due on such indebtedness was terminated. Cathey v. Weaver, 111 Tex. 515, 242 S.W. 447; First National Bank of Alvarado v. Lane, Tex.Civ.App., 265 S.W. 763.

Where a foreclosure sale under a power in a deed of trust is void, the purchaser has the rights of an equitable assignee of the debt and lien. That is, he is entitled to be subrogated to the rights of the trust creditor. Morrow v. Morgan, 48 Tex. 304; Browne v. King, 111 Tex. 330, 235 S.W. 522; Hays v. Tilson, 18 Tex.Civ.App. 610, 45 S.W. 479, error refused; Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329; Kaylor v. Kelsey, 91 Neb. 404, 136 N.W. 54, 40 L.R.A.,N.S., 839. And the rule that a purchaser at a void foreclosure sale becomes an equitable assignee of the debt and deed of trust lien applies to each successive grantee. Browne v. King, 111 Tex. 330, 235 S.W. 522; Ketcham v. Deutsch, 211 N.Y. 85, 105 N.E. 85; Cooper v. Harvey, 21 S.D. 471, 113 N.W. 717; 41 C.J. 1011.

If the beneficiary in a deed of trust buys the property at an invalid trustee's sale and goes into possession, his rights are merely those of a mortgagee in possession after condition broken. Stallings v. Thomas, 55 Ark. 326, 18 S.W. 184. And he is entitled to his debt and interest and reimbursement for the taxes and fire insurance premiums paid by him and the costs of necessary repairs and is bound to account for the payments made to him and the rents and profits received by him or which he ought to have received by the use of reasonable diligence and care. Pioneer Bldg. & Loan Ass'n v. Cowan, Tex. Civ.App., 123 S.W.2d 726, 727.

The court, speaking through Judge Smedley in the case of Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 1083, 115 A.L.R. 329, said:

"* * * a mortgagee who has purchased the land at foreclosure sale, irregular or void as to the mortgagor (or as to one having title under the mortgagor), and who has taken possession under and in reliance upon such foreclosure and purchase, may retain possession against the suit of the mortgagor, or one holding under him, until his debt is paid. * * * The Texas decisions extend the equitable right to third persons, as well as to mortgagees, who purchase at void foreclosure proceedings, by treating the mortgage as still in

effect and subrogating the purchaser to the rights of the mortgagee to the extent of the purchase money paid at the foreclosure sale. * * * While these articles [arts. 5520 and 5522] are in a sense registration statutes, they are in general sense and purpose statutes of limitation. Watson v. First National Bank of Coleman [Tex.Com.App., 285 S.W. 1050], supra. The lapse of time does not satisfy the debt, and although the debt and lien may be barred by limitation the moral obligation will support an agreement renewing the debt and reviving the lien. * * * It is our opinion that the equities of the Jasper State Bank, the valid lien, the unsatisfied debt, and possession taken and held peaceably and in good faith under the trustee's sales, should not be sacrificed to the plea of limitation."

And the court, speaking through Chief Justice Gallagher in the case of First National Bank of Alvarado v. Lane, Tex.Civ. App., 265 S.W. 763, 765, said:

"It is contended that this case belongs to the latter class by reason of the fact that said article 5693 provides that 'the lien created in such mortgages or deeds of trust shall cease to exist four years after the maturity of the debt secured thereby.' If we concede that said provision of the statute does 'take away the right' to a lien within the meaning of the rule announced in the latter class of cases, still this does not ordinarily mean that such right is satisfied, but rather that in a legal sense, so far as enforcement of the same by contractual provision or by decree of court against anybody claiming the benefit of such bar is concerned, the existence of such lien is at an end. With the moral obligation of the original debtor giving the lien to permit the property covered thereby to be appropriated by the creditor to the payment of his debt, the statute does not attempt to deal. 17 R.C. L. p. 666, § 4; Eingartner v. Illinois Steel Co., 103 Wis. 373, 79 N.W. 433, 434, 74 Am.St.Rep. 871. There is nothing in the statutes applicable in this case forbidding the foreclosure of such liens in court with the consent or acquiescence of the parties adversely affected thereby, and such consent or acquiescence may be evidenced by a failure to plead such statutes in bar or such foreclosure. It seems that a lien which has become barred and determined by the provisions of said statutes and priority thereof against a junior lienholder interposing the same as a defense denied may nevertheless be foreclosed in the same action against a party who has not pleaded such statutes in bar of such foreclosure."

Inasmuch as appellants did not plead limitation as a bar to a recovery on the original notes and liens executed by them to Dunaway Bros., appellees, as equitable assignees of such unsatisfied debt and liens, were entitled to judgment for the amount due on such notes and under the deed of trust at the time of the trial, together with foreclosure of such liens. And since such aggregate amount was greater than the amount actually allowed appellees by the judgment of the trial court, appellants are not in a position to complain. Furthermore, we are of the opinion that reason and the equities of the instant case bring it within the rule applied in cases of a mortgagee lawfully in possession. The original notes executed by appellants to Dunaway Bros. bore interest at the rate of ten per cent and provided for ten per cent attorney's fees. O. B. Dunaway purchased the property at trustee's sale on April 3, 1928 for the sum of $714.83, the amount then due on the original notes and sold the property to appellees on August 27, 1928 for the sum of $600, $100 cash and the balance evidenced by notes bearing interest at the rate of eight per cent per annum. Tom J. Frierson paid taxes on the property in the amount of $264.02, insurance premiums in the amount of $52.33, and costs of repairs in the amount of $101.55. The trial court in his calculations charged appellants with the $600, the $264.-02, $52.33 and $101.55, together with interest thereon at the rate of eight per cent per annum and credited them with the $580.19 paid by Maria Johnson to Tom J. Frierson, and the $238.25 collected by Tom J. Frierson as rents from the property, together with interest thereon at the rate of eight per cent per annum. The above set out amounts were established by the uncontroverted and undisputed testimony of the parties. The trial court was not authorized by the facts of this case to render judgment in any event for M. E. Frierson and Tom J. Frierson on the balance due on the $1100 note and award them foreclosure of the purported vendor's lien. Appellees sought in their pleadings to recover judgment on the balance due on the original notes executed to Dunaway Bros., and the facts of this case authorized the trial court to render judgment for appellees on such notes, together with

foreclosure of the liens securing the payment thereof. The facts further warranted the court in considering appellees as mortgagees in possession in adjusting all equities existing between the parties at the time of the trial. Therefore, the judgment of the trial court is reformed so as to decree that M. E. Frierson and Tom J. Frierson do have and recover of and from Tom Johnson the sum of $410.75, together with interest thereon from May 30, 1938, until paid at the rate of eight per cent per annum, together with foreclosure of deed of trust and mechanic's liens as they existed on September 1, 1917, against both Tom and Maria Johnson, and that order of sale and writ of possession issue in the time and manner provided by law.

The judgment of the trial court as reformed is affirmed.